UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL P. TIERNEY,

                              Plaintiff,

       -against-

GERARD A. NEUMANN,

                              Defendant.

Index No.:  07-cv-4090-BSJ-JCF

---

**DEFENDANT GERARD A. NEUMANN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING THE COMPLAINT**

HUGHES HUBBARD & REED LLP
Christopher Paparella
Jason A. Masimore
William J. Sanchez
One Battery Park Plaza
New York, New York 10004
Tel: (212) 837-6000
Fax: (212) 299-6804

*Attorneys for Defendant Gerard A. Neumann*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS ................................................................................................................................ 2

ARGUMENT ...................................................................................................................... 4

    I.    Defendant's Compliance with Omnicom's Direction Not to Distribute Seneca's Cash Did Not Breach Seneca's Operating Agreement ................................................................................................... 5

    II.    Defendant's Compliance with Omnicom's Direction Not to Distribute Seneca's Cash Was Not a Breach of Fiduciary Duty ................ 8

    III.    Defendant's Compliance with Omnicom's Direction Not to Distribute Seneca's Cash Was Not Conversion ....................................... 11

CONCLUSION ................................................................................................................. 14

**PRELIMINARY STATEMENT**

Defendant Gerard A. Neumann submits this memorandum of law in support of his motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings dismissing Plaintiff Michael P. Tierney's complaint in this action. Fed. R. Civ. P. 12(c) compels dismissal of Plaintiff's complaint in the circumstances present here.

Plaintiff's complaint asserts four causes of action for breach of fiduciary duty, breach of contract (two counts), and conversion. All causes of action are founded on Plaintiff's assertion that Defendant breached the operating agreement for Seneca, a limited liability company in which Plaintiff, Defendant and non-party Omnicom were members. Plaintiff asserts that Defendant breached Seneca's operating agreement by complying with Omnicom's instruction not to distribute Seneca's cash.

But Plaintiff's claims are flatly contradicted by Seneca's operating agreement, which provides specifically that Defendant cannot distribute Seneca's cash without Omnicom's prior written consent. Hence, Defendant's compliance with Omnicom's instruction to refrain from distributing Seneca's cash was not a breach of Seneca's operating agreement. Because Plaintiff's claims have no support in the contract on which they are based, they should be dismissed.

There are additional, separate grounds for dismissal of Plaintiff's breach of fiduciary duty and conversion claims. Plaintiff's breach of fiduciary duty claim is barred because Seneca's operating agreement provides that Defendant does not have fiduciary duties to Plaintiff. Plaintiff's conversion claim is defective because Plaintiff has not and cannot plead any of the required elements of conversion under New York law.

# FACTS

This action is based on Plaintiff's claim that Defendant breached the Restated Organization and Operating Agreement, dated as of March 31, 2004 (the "Operating Agreement"), for a Delaware limited liability company called Seneca Investments LLC ("Seneca"). (Complaint, ¶¶ 5, 19; the Operating Agreement is Exhibit 1 to the accompanying Declaration of Gerard A. Neumann, dated May 19, 2008.)

Plaintiff and Omnicom Group Inc. ("Omnicom") each owned 40% and Defendant owned the remaining 20% of Seneca until February 2008.[1] (Complaint, ¶ 11.) Plaintiff, Defendant and an Omnicom representative were Seneca's directors. Plaintiff was Seneca's chief executive officer and Defendant was Seneca's chief financial officer. (Complaint, ¶ 9; Neumann Dec., ¶ 1.)

Plaintiff alleges that beginning in February 2007 Defendant breached the Operating Agreement by complying with Omnicom's instructions to refrain from distributing certain Seneca cash and refusing to comply with Plaintiff's instructions to distribute this cash. (Complaint, ¶¶ 18, 22, 32, 34-50.) This alleged breach by Defendant of the Operation Agreement forms the basis for all four causes of action in Plaintiff's complaint for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing and conversion. (Complaint, ¶¶ 5, 19, 21, 23, 34, 38-41, 43-46, 48-50.)

Despite his reliance on the Operating Agreement in every cause of action in his complaint, Plaintiff has not attached to his complaint the Operating Agreement or

---

[1] Defendant resigned as an officer and director of Seneca and transferred nearly all of his interest in Seneca to Omnicom on February 27, 2008 pursuant to a settlement agreement resolving certain disputes between them. Prior to entering into the settlement agreement, Defendant and Omnicom removed Plaintiff as an officer and director of Seneca and elected new officers and directors. (Neumann Dec., ¶ 1.)

Seneca's Charter and the other exhibits to the Operating Agreement. This is because the Operating Agreement does not support Plaintiff's claims.

The Operating Agreement incorporates Seneca's Charter, which is Exhibit A thereto. (Seneca's Charter is Exhibit 2 to the Neumann Declaration) Paragraph 3.4 of the Operating Agreement provides that "This Agreement, including the Exhibits and Schedules referred to herein or therein or attached thereto (each of which is part of this Agreement) constitutes the entire agreement . . . among the parties with respect to the subject matter hereof . . . ." (Neumann Dec., Exhibit 1.)

Paragraph 6(d)(ix) of Seneca's Charter (and hence the Operating Agreement) provides that Omnicom's written consent is a condition precedent to the distribution of Seneca's cash and other assets:

> So long as any outstanding shares of Common Stock are held by Omnicom, notwithstanding any provision in any other Constituent Document, the Company will not, <u>without first having obtained Omnicom's prior written consent . . . pay or distribute funds, assets or securities to Stockholders, directors, officers, key management employees or any persons controlling, controlled by, under common control with or otherwise affiliated with, or a member of a family of, any such person</u> . . . .

(Seneca Charter at ¶ 6(d)(ix) (emphasis added) (Neumann Dec., Exhibit 2).)

Plaintiff alleges in the Complaint that Omnicom did not give its written consent to the distribution demanded by Plaintiff. (Complaint, ¶ 17 ("Omnicom instructed Neumann not to make any further shareholder distributions to Plaintiff.").) Hence, Defendant complied with the Operating Agreement in refraining from distributing Seneca's cash.

The Operating Agreement also provides that Defendant has no fiduciary duty to Plaintiff:

> Directors, officers, . . . and direct and indirect holders of Common Stock of the Company . . . will not have any duty, fiduciary or otherwise, to any . . . other stockholders . . . .

(Seneca Operating Agreement at ¶ 1.2(c) (Neumann Dec., Exhibit 1).)

## ARGUMENT

Rule 12(c) of the Federal Rules of Civil Procedure provides that the Court should dismiss a complaint on the pleadings where, accepting well-pleaded factual allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party, the complaint does not allege "'enough facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* __ U.S. __, 127 S.Ct. 1955, 1974 (2007)); *see also Bernheim v. Litt,* 79 F.3d 318, 320 (2d Cir. 1996). The Court must construe all well-pleaded factual allegations as true and draw all reasonable inferences in favor of non-movant, but implausible allegations and "bald assertions and conclusions of law" will not suffice. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *see also Bell Atl. Corp.*, 127 S. Ct. at 1972 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007) (dismissing complaint under Rule 12(b)(6) based on implausibility of allegations).

Even though Plaintiff has not attached the Operating Agreement to his complaint, the Court may rely upon the Operating Agreement and its various constituent parts, including Seneca's Charter, in deciding this motion because it is integral to

4

Plaintiff's claims. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

The foregoing standard compels dismissal of Plaintiff's complaint. Having agreed in the Operating Agreement that Seneca could not distribute cash without Omnicom's written consent, Plaintiff cannot claim that Defendant's refusal to distribute cash without Omnicom's written consent is a breach of the Operating Agreement. Plaintiff's causes of action for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing and conversion, all of which are based on such refusal, fail to state valid claims. As shown below, there are independent grounds for dismissal of Plaintiff's breach of fiduciary duty and conversion claims.

**I.
DEFENDANT'S COMPLIANCE WITH OMNICOM'S DIRECTION NOT TO DISTRIBUTE SENECA'S CASH DID NOT BREACH SENECA'S OPERATING AGREEMENT**

Plaintiff's Second and Third Causes of Action are for breach of contract. Both claims are based on his allegation that Defendant breached Seneca's Operating Agreement by following Omnicom's instruction to refrain from making cash distributions as demanded by Plaintiff. (Complaint, ¶¶ 17-18, 22.)

Plaintiff's claim in his Second Cause of Action that Defendant breached the Operating Agreement by honoring Omnicom's direction not to distribute Seneca's cash is specious. Defendant's compliance with Omnicom's instruction to refrain from cash distributions was required by the express terms of Seneca's Charter, which formed part of the Operating Agreement:

> So long as any outstanding shares of Common Stock are held by Omnicom, notwithstanding any provision in any other Constituent Document, the Company will not, without first having obtained Omnicom's prior written

5

> consent . . . pay or distribute funds, assets or securities to
> Stockholders, directors, officers, key management
> employees or any persons controlling, controlled by, under
> common control with or otherwise affiliated with, or a
> member of a family of, any such person . . . .

(Seneca Charter at ¶ 6(d)(ix) (Neumann Dec., Exhibit 2).)

Plaintiff alleges in his complaint that Omnicom refused to consent to the Seneca cash distributions demanded by Plaintiff. (Complaint, ¶ 17.) Absent Omnicom's consent, Defendant was not permitted under Seneca's Operating Agreement to comply with Plaintiff's demand for Seneca's cash. Defendant's refusal to comply with Plaintiff's demand was not therefore a breach of the Operating Agreement.

Plaintiff's Third Cause of Action attempts to avoid the plain language of Seneca's charter by re-labeling his breach of contract claim as being for breach of the implied covenant of good faith and fair dealing "inherent in the Seneca Operating Agreement." (Complaint, ¶¶ 33, 45.)

This attempted end run is meritless. The implied covenant of good faith and fair dealing may not be used "to add new terms to an agreement . . . or to override express contractual terms." *In re IT Group, Inc.*, 448 F.3d 661, 671 (3d Cir. 2006) (internal citations omitted). It is no more than an "'interpretive tool to determine the parties' justifiable expectations'" *Id.* at 671 (quoting *Northview Motors Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000)). The implied covenant, while present in every contract, is relevant only when a contract fails to address the specific conduct complained of. In contrast, "where the subject at issue is expressly covered by the contract . . . the implied duty to perform in good faith does not come into play." *Kimberlin v. Ciena Corp.*, No. 96 Civ. 8704(SS), 1998 WL 603234, at *9 (S.D.N.Y. Sept. 11, 1998) (applying Delaware law and quoting *Dave Greytak Enters. Inc. v. Mazda*

6

*Motors of Am. Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992)); *see also Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032-33 (Del. Ch. 2006) ("[I]mplied covenant analysis will only be applied when the contract is truly silent with respect to the matter at hand . . . .").

The Delaware Court of Chancery's decision in *Allied Capital* is directly on point. That case involved a $10 million note from the defendant to plaintiff that prohibited the defendant or its subsidiaries from engaging in any *debt* investments that were not subordinated to the note. *Allied Capital*, 910 A.2d at 1026. The plaintiff claimed that an unsubordinated *equity* investment by the debtor violated the implied covenant of good faith and fair dealing. *Id.* at 1028. The court rejected the plaintiff's claim, holding that "the parties directly addressed [debtor's] ability to make future investments . . . and specifically prohibited only unsubordinated *debt* investments." *Id.* at 1034 (emphasis added). The plaintiff could not "use the implied covenant of good faith and fair dealing to avoid the consequences of the plain language of the contract." *Id.* at 1035. The court called its decision "another in a long line of cases in which a plaintiff has tried, unsuccessfully, to argue that the implied covenant grants it a substantive right that it did not extract during negotiation." *Id.* at 1024.

The foregoing authority requires dismissal of Plaintiff's breach of contract causes of action. The implied covenant may not be used by Plaintiff to oust the express language of Seneca's Charter (and therefore the Operating Agreement) providing that Defendant could not distribute Seneca's cash without Omnicom's prior written consent. (Seneca Charter at ¶ 6(d)(ix) (Neumann Dec., Exhibit 2).)

7

## II.
## DEFENDANT'S COMPLIANCE WITH OMNICOM'S DIRECTION NOT TO DISTRIBUTE SENECA'S CASH WAS NOT A BREACH OF FIDUCIARY DUTY

Plaintiff's First Cause of Action for breach of fiduciary duty merely re-labels the breach of contract claims in the Second and Third Causes of Action. (Complaint, ¶¶ 34-37.) Plaintiff alleges that Defendant "breached his fiduciary duties to [him] by refusing to distribute any of Seneca's cash to its members." (Complaint, ¶ 36.) Plaintiff's claim fails for two reasons.

First, Plaintiff's breach of fiduciary duty claim should be dismissed because Paragraph 1.2(c) of the Seneca Operating Agreement provides that Defendant has no fiduciary duty to Mr. Tierney:

> Directors, officers, . . . and direct and indirect holders of Common Stock of the Company . . . will not have any duty, fiduciary or otherwise, to any . . . other stockholders . . . .

(Seneca Operating Agreement at ¶ 1.2(c) (Neumann Dec., Exhibit 1).)

This provision is enforceable under Delaware law, which governs the Seneca Operating Agreement. (*Id.* at ¶ 3.2.) Delaware law recognizes the rights of limited liability company members (such as Plaintiff and Defendant) to waive in advance their right to make claims for breach of fiduciary duty against other members, directors and officers:

> To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement . . . .

8

6 Del. Code § 18-1101(c). "A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) . . . " 6 Del. Code § 18-1101(e); *see Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1149 (Del. Ch. 2006) (noting that the "Delaware Limited Liability Company Act . . . permits the contractual elimination of default principles of fiduciary duty"). Indeed, it is the express policy of Delaware law to "give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 290 n.20 (Del. 1999) (quoting 6 Del. Code §18-1101(b)).

Judge Pauley's dismissal on the pleadings of a breach of fiduciary duty claim governed by Delaware law in *DIRECTV Group, Inc. v. Darlene Investments, LLC,* No. 05-5819 (WHP), 2006 WL 2773024, at *1 (S.D.N.Y. Sept. 27, 2006), is on point. Plaintiff and defendant, the sole shareholders of a Delaware limited liability company, had an operating agreement that imposed fiduciary duties. They amended the operating agreement and eliminated any mention of fiduciary duties. *Id.* at *6. Based on the amendment, the Court dismissed plaintiff's breach of fiduciary duty claim, holding that "[c]ontracting parties are free to eliminate fiduciary duties in a limited liability company agreement." *Id.* (citing *Walker v. Res. Dev. Co. Ltd., LLC*, 791 A.2d 799, 813 (Del. Ch. 2000), and quoting its proposition that "[o]nce members exercise their contractual freedom in their limited liability company agreement, they can be virtually certain that the agreement will be enforced in accordance with its terms").

Seneca's Operating Agreement is even clearer in its elimination of fiduciary duties than the agreement in the *DIRECTV* case. The Operating Agreement

9

provides specifically that Defendant and Plaintiff have no fiduciary duties to each other (rather than simply omitting mention of such duties). (Seneca Operating Agreement at ¶ 1.2(c) (Neumann Dec., Exhibit 1).)

Second, Plaintiff's breach of fiduciary claim must fail for the same reasons as his breach of contract claims: the Operating Agreement prohibited Mr. Neumann from distributing Seneca cash without Omnicom's prior written consent. Plaintiff admits that Omnicom did not give its written consent to the distribution complained of by Plaintiff. (Complaint, ¶ 17 ("Omnicom instructed Neumann not to make any further distributions to Plaintiff.").) Hence, Defendant's compliance with Omnicom's instruction not to distribute Seneca's cash was neither a breach of contract or a breach of fiduciary duty. It is well settled that fiduciary duty claims will not lie where they are, as here, merely duplicative of breach of contract claims. *See Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006) (dismissing fiduciary duty claims because "the complaint assert[ed] contractual and fiduciary claims that ar[o]se from the same alleged facts and underlying conduct"); *see also Solow v. Aspect Resources, LLC*, No. Civ. A. 20397, 2004 WL 2694916, at *4 - *5 (Del. Ch. Oct. 19, 2004) (dismissing fiduciary duty claims because they were "duplicative of the contractual claims, and because the claims ar[o]se from the partnership agreement instead of general fiduciary principles").

The Court should dismiss Plaintiff's breach of fiduciary duty claim as duplicative of his meritless breach of contract claim and barred, in any event, by the Seneca Operating Agreement.

# III.
## DEFENDANT'S COMPLIANCE WITH OMNICOM'S DIRECTION NOT TO DISTRIBUTE SENECA'S CASH WAS NOT CONVERSION

Plaintiff's fourth cause of action for conversion is based on Plaintiff's allegation that Defendant "intentionally and illegally interfered with Plaintiff's interest in the cash of Seneca" and "specifically interfered, *inter alia*, with Plaintiff's right to a distribution of the available cash of Seneca." (Complaint, ¶¶ 49-50.)

Plaintiff's allegations do not state a valid claim for conversion under New York law. A conversion claim must be based on allegations that "(1) an actionable wrong other than breach of contract caused plaintiff's injury; (2) plaintiff had ownership of the funds at the time they were converted; (3) defendant exercised unauthorized dominion over the funds; (4) the funds were specific and identifiable; and (5) the defendant was to have treated the funds in a particular manner, but they were not so treated." *Rozsa v. May Davis Group, Inc.*, 152 F. Supp. 2d 526, 534 (S.D.N.Y. 2001) (citing *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000)).[2] Plaintiff's conversion claim fails to meet this standard.

Plaintiff's conversion claim does not state an actionable wrong other than breach of contract. His conversion claim merely rehashes his breach of contract claim. It is based on his allegation that Defendant breached the Seneca Operating Agreement by failing to cause Seneca to distribute cash upon Plaintiff's demand. (Complaint, ¶¶ 17-20, 48-50.)

---

[2] Because the conversion is alleged to have occurred in New York, and "a claim for conversion does not depend on questions of internal partnership governance," New York law applies. *Barrett v. Toroyan*, 28 A.D.3d 331, 333 (N.Y. App. Div. 2006).

*Andersen v. Weinroth*, No. 602339/03, 2006 WL 2569959 (N.Y. Sup. Ct. Sept. 5, 2006) is on point. In a lawsuit between partners under an agreement to distribute proceeds from an investment, the plaintiff interposed a conversion claim in addition to a breach of contract claim based on his allegation that the defendant had lied about the amount of his initial investment and caused more than his share of the investment proceeds to be distributed to him at the expense of the plaintiff. *Id.* at *26. The Court dismissed the conversion claim because it merely restated Plaintiff's breach of contract claim:

> Because I have already found that a contract between the parties governed the distribution of [the investment's] proceeds, the cause of action for conversion based on [that] investment merely restates [plaintiff's] causes of action for breach of the [investment] contract and, therefore, is dismissed.

*Id.* at *29; *see also Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (holding that "Plaintiff's conversion claim . . . is redundant and must be dismissed" where plaintiff claimed that defendant auto dealer had converted cars by paying with bad checks but plaintiff had a contractual right to re-possess cars for which the dealer had not paid); *Hutton v. Klabal*, 726 F. Supp. 67, 72 (S.D.N.Y. 1989) (holding that a conversion claim must be based on "acts that are unlawful or wrongful, as distinguished from acts that are a mere violation of contractual rights").

Plaintiff does not allege that he owned the Seneca cash allegedly converted by Defendant. To the contrary, the gist of Plaintiff's complaint is that Seneca owned the cash and that Defendant wrongfully refused to transfer ownership of such cash to Plaintiff. (Complaint, ¶¶ 17-19.) This does not state a valid conversion claim. *Rozsa*, 152 F. Supp. 2d at 534.

12

Plaintiff does not allege that Defendant engaged in "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883 (N.Y. App. Div. 1982). To the contrary, as noted above, Plaintiff alleges that Seneca owns and possesses the cash in dispute. *Andersen*, 2006 WL 2569959, at *29 (dismissing a conversion claim because the plaintiff did not allege that the defendant took possession of any of the amounts allegedly converted from the parties' partnership capital account: "Without possession of any of the firm's capital, [defendant] cannot be liable for conversion.").

Plaintiff does not allege the conversion of specific and identifiable funds. Plaintiff does not claim that he owns or that Defendant converted a specific, identifiable, segregated sum of money. Plaintiff merely alleges that Defendant failed to cause Seneca to disburse to Plaintiff $800,000 of approximately $2 million in cash owned by Seneca. (Complaint, ¶¶ 17-18, 29, 31.) Where, as here, an action is brought for the conversion of money, a plaintiff must demonstrate that "'there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (quoting *Mfrs. Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 124 (N.Y. App. Div. 1990)); *see also Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99 civ. 11541, 2000 WL 1036034, at *4 (S.D.N.Y. July 27, 2000) (dismissing conversion claim that sought the return of a sum certain, $610,674, which had been invested in a fund in reliance upon misrepresentations, because plaintiff "did not claim ownership to a specific, identifiable, segregated sum of money").

Finally, Plaintiff cannot allege that "the defendant was to have treated the funds in a particular manner but they were not so treated." *Rozsa*, 152 F. Supp. 2d at 534. As shown above, Defendant did exactly what he was required to do by the Seneca Operating Agreement. Upon receipt of Omnicom's instruction not to disburse Seneca's cash, Defendant refrained from doing so.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant Neumann's motion for judgment on the pleadings, dismiss each of Plaintiff Tierney's causes of action with prejudice, and award such other relief as the Court may find to be just and equitable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:   s/ Christopher Paparella
     Christopher Paparella
     Jason A. Masimore
     William J. Sanchez
     One Battery Park Plaza
     New York, New York 10004
     Tel: (212) 837-6000
     Fax: (212) 299-6804

*Attorneys for Defendant Gerard A. Neumann*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 21, 2008, I caused true and correct copies of Defendant Gerard A. Neumann's Notice of Motion for Judgment on the Pleadings Dismissing the Complaint, and his Memorandum and Declaration in support of same by ECF, email, and overnight by Federal Express to:

    William Coudert Rand
    Law Offices of William Coudert Rand
    711 Third Avenue, Suite 1505
    New York, New York 10017
    *Attorney for Plaintiff Michael P. Tierney*

                                          /s Jason A. Masimore
                                          Jason A. Masimore