EXHIBIT 2

<u>Exhibit A</u>

# RESTATED CHARTER
# OF
# SENECA INVESTMENTS LLC

Pursuant to the Restated Organization and Operating Agreement, dated as of March 31, 2004 (the "<u>Restated LLC Agreement</u>"), the Charter of Seneca Investments LLC (the "<u>Company</u>") is as follows:

1. **Name of the Company:** The name of the company is SENECA INVESTMENTS LLC (the "<u>Company</u>").

2. **Registered Office; Agent; Place of Business:** The registered office and registered agent of the Company in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Wilmington, Delaware 19808. The principal place of business of the Company shall be at such address or such other place within the New York City metropolitan area as the Board of Directors of the Company (the "<u>Board</u>") may determine.

3. **Purpose:** As provided in the Restated LLC Agreement, the purpose of the Company is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law (the "<u>DGCL</u>").

4. **Duration:** The Company will exist until the tenth anniversary of the LLC Agreement unless earlier dissolved.

5. **Authorized Capital Stock:** The total authorized capital stock of the Company is 41,666.66 shares, no par value, which shall be designated "<u>Common Stock</u>."

6. **Designations, Powers, Preferences, Etc. of Common Stock:** All shares of Common Stock will be identical and will entitle the holders thereof to the same rights and privileges.

　　(a)　**Voting Generally:** The holders of the Common Stock will possess all voting power. Each holder of Common Stock will be entitled to one vote for each share held on all matters submitted to Stockholders of the Company, whether by vote at a meeting or for action by written consent, and holders of Common Stock will vote together as a single class on all matters submitted to Stockholders of the Company.

　　(b)　**Election of Directors:** Subject to the provisions of this paragraph 6(b), the holders of outstanding shares of Common Stock will, voting together as a single class, be entitled to elect all of the members of the Board; provided that such holders of Common Stock shall elect to the Board one member designated by Omnicom (the "<u>Omnicom Director</u>"). The election of each Director by the holders of Common Stock will occur (i) at the annual meeting of holders of Capital Stock, (ii) at any special meeting

#441758v7 05346-0001-040

of holders of Capital Stock, or (iii) by the written consent of holders of a majority of the voting power of the outstanding shares of Common Stock. Notwithstanding the foregoing, the holders of a majority of the outstanding shares of Common Stock may, in their sole discretion, remove any Director at any time, with or without cause; provided, however, removal of the Omnicom Director may only occur upon written request by Omnicom. Subject to the rights of Stockholders provided in the Constituent Documents and applicable provisions of the DGCL and the Act, the Board will have the power to direct the oversight of the management of the Company.

(c) **Certain Actions:** Unless a higher percentage may be required by law or the Constituent Documents (including as may addressed herein), any action required to be approved by Stockholders may be so approved by a majority vote of the holders of the outstanding shares of stock of the class entitled to vote on the matter.

(d) **Voting Rights:** So long as any outstanding shares of Common Stock are held by Omnicom, notwithstanding any provision in any other Constituent Document, the Company will not, without first having obtained Omnicom's prior written consent:

(i) create, obligate itself to create, authorize or issue any Capital Stock of the Company (or reclassification of any existing Capital Stock) or securities exercisable for or convertible or exchangeable into Capital Stock of the Company;

(ii) create any bonds, notes or other obligations convertible into, exchangeable for or having option rights to purchase shares of Capital Stock;

(iii) create any new Subsidiaries or Affiliates of the Company that would adversely affect the Common Stock;

(iv) assign, sell, lease, contribute or otherwise dispose of or transfer whether by sale, license, merger, consolidation, liquidation, dissolution or otherwise, any of the Company's material assets for less than fair market value;

(v) enter into any transaction with any related party of Management LLC or any of its Affiliates;

(vi) agree to a merger, sale or consolidation of the Company with or into another entity or the effectuation of any transaction or series of related transactions in which more than 20% of the voting power of the Company is disposed;

(vii) apply for or consent to the appointment of a receiver, trustee, administrator, manager or liquidator of the Company or any of its property or file a voluntary petition in bankruptcy or an answer admitting the material allegations of an involuntary petition filed against the Company;

(viii) convert the Company into a corporation pursuant to Section 265 of the DGCL;

#441758v7 05346-0001-040

2

(ix) pay or distribute funds, assets or securities to Stockholders, directors, officers, key management employees or any persons controlling, controlled by, under common control with or otherwise affiliated with, or a member of a family of, any such person, except (A) payments pursuant to that certain Management Agreement dated as of the date hereof between the Company and Management LLC (the "Management Agreement") and (B) payments of accrued expenses reflected on the Balance Sheet of the Company as of March 31, 2004, as amended by the Final Closing Balance Sheet (as defined in the Exchange Agreement dated as of the date hereof, between the Company and Omnicom);

(x) apply any of the Company's assets to the redemption or acquisition of any shares of Common Stock;

(xi) make any material change in the Company's capital structure, including acquisitions and dispositions of assets greater than 20% of the fair value of the Company's total assets, which would adversely affect the Common Stock;

(xii) except as required by law, take any action that would cause the Company not to be treated as a "partnership" for federal or state tax purposes or that would materially adversely affect the tax position of Omnicom;

(xiii) amend (or waive any provision of) any Constituent Document (including any exhibit thereto) that would adversely affect the Common Stock; and

(xiv) cause or permit any of the Company's Subsidiaries to take or agree to take any of the actions set forth above.

(e) **Information Rights:** So long as any outstanding shares of Common Stock are held by Omnicom, the Company will supply Omnicom reasonable access on a timely basis to financials, records and accountants of the Company, including without limitation information requested by Omnicom for tax or financial accounting purposes and all reports and notices given to members of the Board.

7. **Notice:** In the event the Company establishes a record date to determine the holders of any class of securities who are entitled to receive any dividend or other distribution or who are entitled to vote at a meeting (or by written consent) or whose shares of Capital Stock are to be redeemed (either voluntarily or as a result of any action by the Company or otherwise that would result in a right of redemption) in accordance with the provisions of this Charter, the Company will give notice in the manner specified in the LLC Agreement to each holder of Capital Stock at least ten days prior to such record date specified therein or the expected effective date of any such event or transaction, whichever is earlier, specifying (i) the date of such record date, (ii) the date on which any event or transaction is expected to become effective, and (iii) the date on which the books of the Company will close or a record will be taken with respect to any such event.

8. **No Reissuance of Capital Stock:** No share or shares of Capital Stock acquired by the Company by reason of redemption, purchase, conversion or otherwise may be reissued, and all

3

#441758v7 05346-0001-040

such shares will be canceled, retired and eliminated from the shares which the Company will be authorized to issue.

9. **Contractual Rights of Holders:** The various provisions set forth herein for the benefit of the holders of the Capital Stock will be deemed contract rights enforceable by them, including without limitation one or more actions for specific performance, subject to the LLC Agreement.

10. **Severability of Provisions:** If any voting powers or other special rights of the Common Stock and qualifications, limitations and restrictions thereof set forth in this Charter are invalid, unlawful or incapable of being enforced by reason of any rule of law or public policy, all other voting powers and other special rights of the Common Stock and qualifications, limitations and restrictions thereof set forth in this Charter which can be given effect without the invalid, unlawful or unenforceable voting powers and other special rights of the Common Stock and qualifications, limitations and restrictions thereof will nevertheless remain in full force and effect, and no voting powers or other special rights of the Common Stock or and qualifications, limitations and restrictions thereof herein set forth will be deemed dependent upon any other such voting powers or other special rights of the Common Stock and qualifications, limitations and restrictions thereof unless so expressed herein.

11. **Indemnification; Duties:** The Company will, to the fullest extent permitted or required by law, as from time to time amended and supplemented, indemnify any direct or indirect stockholder, director, officer or Affiliate of the Company from and against any and all of the expenses, liabilities, costs or other matters to the extent the same arose from or related directly or indirectly to the conduct of the business or affairs of the Company (other than with respect to a Non-Indemnifiable Loss of such Person), and the indemnification provided for herein will not be deemed exclusive of any other rights to which those indemnified may be entitled under any bylaw, agreement, vote of the Stockholders or disinterested directors or otherwise, both as to any action in an official capacity and as to action in another capacity while holding such office, and will continue as to a person who has ceased to be director, officer, employee or agent and will inure to the benefit of the heirs, executors and administrators of such person. Any repeal or modification of this Section 11 will not adversely affect any right or protection existing hereunder immediately prior to such repeal or modification. "Affiliate" of a Person means (i) with respect to an individual, any member of such person's family, (ii) with respect to an entity, any officer, director, direct or indirect shareholder, partner or permitted transferee in such entity or of or in any affiliate of such entity, and (iii) with respect to an individual or entity, any Person or entity which directly or indirectly controls, is controlled by, or is under common control with (within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended) such Person or entity.

12. **DGCL Opt Outs:** The Company hereby elects not to be governed by Sections 102(b)(7), 144, 145, 160(a), 170, 172, 173, 174, 203 and 282 of the DGCL as from time to time in effect or any successor provision thereto.

4

#441758v7 05346-0001-040

13. **Number of Directors:** The initial number of directors shall be three (including the Omnicom Director), and will not be increased or decreased without the affirmative vote of the Omnicom Director.

14. **Election of Directors:** Election of directors at an annual or special meeting of Stockholders need not be by written ballot unless the Bylaws so provide.

15. **Amendments:** The Company may amend the Charter or its Bylaws in the manner provided in the LLC Agreement.

16. **Transfer Restrictions; Restriction Period:**

    (a)  No holder of Common Stock shall Transfer, except to Permitted Transferees, all or any portion of the Common Stock now owned or hereinafter acquired by such holder except in compliance with Section 16(c) below. For purposes of this Section 16, "Transfer" means any direct or indirect offer, transfer, donation, sale, assignment, conveyance, encumbrance, mortgage, gift, pledge, hypothecation, grant of a security interest in or other disposal or attempted disposal of all or any portion of a security or of any rights connected thereto or interests therein, with or without consideration, whether voluntary or involuntary, including but not limited to, any Transfer by operation of law, by court order, by judicial process or by foreclosure, levy or attachment.

    (b)  **Permitted Transferees:** Nothing herein will prohibit the Transfer of Capital Stock to (i) another holder of Capital Stock, (ii) the Company (if such transfer is otherwise permitted under the Constituent Documents), or (iii) wholly owned subsidiaries of the holders of Capital Stock provided that such subsidiary enters into a joinder to the LLC Agreement (as described in Section 2.1(a) thereof) simultaneously with or prior to the transfer ("Permitted Transferees"). Notwithstanding the foregoing, with respect to Management LLC, Permitted Transferees shall include Michael Tierney and Gerard Neumann, provided that each such individual transferee enters into a joinder to the LLC Agreement (as described in Section 2.1(a) thereof) simultaneously with or prior to the transfer.

    (c)  **Right of First Refusal:**

        (i)  **Notice of Offer:** Subject to Sections 16(a), (b) and (d), if any holder of Common Stock receives a bona fide offer for any or all of the Common Stock then owned by such holder (the "Selling Holder") that the Selling Holder intends to accept, the Selling Holder shall deliver a written notice (a "Notice of Offer") to the other holders of Common Stock (the "Remaining Holders") at least 30 days in advance of such proposed sale. The Notice of Offer shall describe in reasonable detail the shares of Common Stock being offered (the "Subject Shares"), the purchase price for the sale of the Subject Shares (the "Target Price") and all other material terms and conditions of the offer.

#441758v7 05346-0001-040

5

(ii) **Offer Period:** Each Remaining Holder shall have the option to purchase all or a portion of the Subject Shares at the Target Price (except that if the Target Price includes consideration other than cash, the Target Price shall be reduced to its cash equivalent as reasonably determined by the Company's accountants) (the "Right of First Refusal"). The Right of First Refusal shall be exercisable by written notice to the Selling Holder delivered within 30 days after the delivery of the Notice of Offer (the "Offer Period"). If the Right of First Refusal is exercised by more than one Remaining Holder, the percentage of the Subject Shares that may be purchased by each such Remaining Holder shall be determined by dividing the number of shares of Common Stock owned by each such Remaining Holder by the total number of shares of Common Stock owned by all Remaining Holders who elect to exercise the Right of First Refusal, without reference to the shares of Common Stock held by any Remaining Holders who elect not to purchase any Subject Shares. In the event that any Remaining Holder does not fully subscribe for its proportionate share of the Subject Shares, each fully participating Remaining Holder shall have an option to purchase that percentage of such unsubscribed Subject Shares determined by dividing the number of shares of Common Stock owned by such fully participating Remaining Holder by the total number of shares of Common Stock owned by all fully participating Remaining Holders.

(iii) **Contract with Proposed Purchaser:** If any Selling Holder has given the Remaining Holders a Notice of Offer and the Remaining Holders, collectively, have failed to exercise their right to purchase all of the Subject Shares pursuant to subsection (ii) above, the Selling Holder may, within ninety (90) days after the end of the Offer Period, execute a contract with a third party (the "Proposed Purchaser") providing for the bona fide sale of the unsold Subject Shares at or above the Target Price and on terms no less favorable than those contained in the Notice of Offer (the "Purchase Contract"). The Purchase Contract shall expressly provide for the rights of each holder of Common Stock under this Section 16. Within 10 days after the execution of the Purchase Contract, the Selling Holder shall deliver a written notice of such Purchase Contract (a "Notice of Proposed Transfer") to the Remaining Holders together with a copy of the Purchase Contract. Such Notice of Proposed Transfer will also include the name of the Proposed Purchaser and a statement of the material relationships, if any, between the Selling Holder and the Proposed Purchaser. If the Proposed Purchaser is not an individual, the Selling Holder shall use its best efforts to include in the Notice of Proposed Transfer a brief description of the business of the Proposed Purchaser.

(d) **Publicly Traded Partnership:** Notwithstanding anything contained herein, no transfers shall be permitted or recognized by the Company if any such transfer could cause the Company to be treated as a "publicly traded partnership" for purposes of Section 7704 of the Internal Revenue Code.

17. **Dissolution: Company Liquidating Events:**

(a) The Company will dissolve and commence winding up and liquidating upon the occurrence of any Company Liquidating Event. The Company will not dissolve prior to the occurrence of any Company Liquidating Event. "Company Liquidating Event" means any of the following events:

GN 0403

(i) the voluntary or involuntary bankruptcy of the Company;

(ii) the happening of any event that makes it unlawful or impossible to carry on the business of the Company, or the Delaware Court of Chancery has entered a final decree pursuant to Section 18-802 of the Act;

(iii) the adoption of a plan of liquidation in accordance with the requirements of Sections 275(a) and (b) of the DGCL; and

(iv) sale or other disposition of all of the assets of the Company, unless otherwise agreed by the parties.

For the avoidance of doubt, the occurrence of any event described in Section 18-801(a)(4) of the Act with respect to the holders of Capital Stock will not be a Company Liquidating Event.

(b) **Distribution of Assets:** Upon the occurrence of a Company Liquidating Event, the Company will continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and the holders of Capital Stock, and the Board will not take any action with respect to the Company that is inconsistent with the winding up of the Company's business and affairs. The Board will be responsible for overseeing the winding up and dissolution of the Company, will take full account of the Company's assets and liabilities, and will cause the Company's assets or the proceeds from the sale or disposition thereof, to the extent sufficient therefor, to be applied and distributed, to the maximum extent permitted by law, in the following order:

(i) first, as provided in Section 18-804(a)(1) of the Act; and

(ii) to the extent not covered under clause (i) above, all indebtedness, liabilities and obligations owed to Omnicom or its Affiliates; and

(iii) thereafter, in accordance with Section 2.2 of the Operating Agreement.

(c) **Notice of Dissolution:** The Company will promptly notify the holders of Capital Stock of any Company Liquidating Event.

(d) **Certificate of Cancellation:** In accordance with the Act, as soon as possible following the occurrence of any of the events specified in Section 18(a) effecting the dissolution of the Company, the Board will cause to be executed and filed a certificate of cancellation with the Secretary of State of the State of Delaware in such form as is prescribed by the Secretary of State of the State of Delaware.

18. **Interpretation:** In the event of an inconsistency between this Charter or the Bylaws and the LLC Agreement, the LLC Agreement will prevail. In addition to the terms defined in the Charter, terms used herein which are defined in the LLC Agreement are used herein as so defined.

#441758v7 05346-0001-040

7

19. **Additional Separateness Covenants:** Notwithstanding any provision herein or in the other Constituent Documents to the contrary, the Company (in order to preserve its separate and distinct identity) will:

(a) Maintain its books, records and bank accounts separate from those of any other person or entity;

(b) Hold all of its assets in its own name and not commingle its assets with those of any other person or entity;

(c) Conduct its business in its name;

(d) Maintain financial statements showing its assets and liabilities separate and apart from those of any other person or entity and not list its assets on the financial statements of any other person or entity;

(e) Pay its liabilities and expenses, including salaries of any employees, only out of its funds;

(f) Observe all limited liability company and other organizational formalities;

(g) Maintain an arm's-length relationship with other persons and entities and enter into transactions with other persons and entities only on a commercially reasonable basis;

(h) Maintain a sufficient number of employees in light of its contemplated business operations or otherwise provide for management and administration of its operations;

(i) Not hold out its credit as being available to satisfy the obligations of other persons or entities, not pledge its assets for the benefit of other persons or entities and, in general, hold itself out as a separate entity and correct any known misunderstanding regarding its separate identity;

(j) Not acquire the obligations or securities of other persons or entities, guarantee or become obligated for the debts of other persons or entities or make loans to other persons or entities or buy or hold any evidence of indebtedness issued by other persons or entities;

(k) Allocate fairly and reasonably any overhead expenses that are shared with any other person or entity, including paying for office space and services provided to the Company by any other person or entity;

(l) Other than as may be necessary for Management LLC to provide services under the Management Agreement, use separate stationery, invoices, checks and other business forms bearing the Company's name and not the name of any other person or

8

#441758v7 05346-0001-040

entity; not use a mailing address, e-mail address or telephone number of any other person or entity; and not identify itself as a division of any other person or entity; and

(m) Maintain adequate capital in light of its contemplated business operations.

For purposes hereof, (1) direct or indirect Subsidiaries of the Company and (2) other entities in which the Company has an equity interest will not be considered an "other person or entity" unless, in the case of clause (2), any direct or indirect stockholders of the Company or such stockholders' direct or indirect subsidiaries (other than the Company and its direct or indirect Subsidiaries) also have an equity interest in such entity.

20. **Unanimous Approval for Certain Actions:** The Company will not take any "Bankruptcy Action" without the unanimous and affirmative vote or consent of the holders of all of its Common Stock. "Bankruptcy Action" means any of the following:

(a) Taking any action that would render the Company insolvent immediately after the taking of such action;

(b) Commencing any case, proceeding or other action on behalf of the Company, or otherwise seeking any relief, under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization or relief from debts or the protection of debtors generally;

(c) Filing a petition or consenting to a petition seeking reorganization, arrangement, adjustment, winding-up, composition or other relief on behalf of the Company of its debts under any federal or state law relating to bankruptcy, or consenting to the institution of bankruptcy or insolvency proceedings against the Company;

(d) Seeking or consenting to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for the Company or a material portion of the Company's assets;

(e) Making any assignment for the benefit of the Company's creditors; and

(f) Taking any action that is reasonably likely to result in any of the foregoing.

GN 0406