William C. Rand, Esq.
LAW OFFICE OF WILLIAM COUDERT RAND
711 Third Ave., Suite 1505
New York, New York  10017
(Phone) (212) 286-1425; (Fax)(212) 599-7909
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

MICHAEL P. TIERNEY,                              :          07 Civ. 4090 (BSJ) (JCF)
                                                 :
                          Plaintiff,             :
                                                 :
       -against-                                 :
                                                 :
GERARD A. NEUMANN,                               :
                                                 :
                          Defendant.             :
                                                 :
-------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS


Dated: June 13, 2008

                              LAW OFFICE OF WILLIAM COUDERT RAND

                              William Coudert Rand, Esq. (WR-7685)
                              711 Third Avenue, Suite 1505
                              New York, New York 10017
                              Tel: (212) 286-1425
                              Attorney for Plaintiff

TABLE OF CONTENTS                    Page

PRELIMINARY STATEMENT……………………………………………………………….1

SUMMARY STATEMENT OF THE ALLEGATIONS
OF THE COMPLAINT………………………………………………………………………...5

STANDARD APPLICABLE TO MOTION FOR
JUDGMENT ON THE PLEADINGS…………………………………………………………8

ARGUMENT

I.    PLAINTIFF HAS PLED AN ACTION FOR BREACH OF CONTRACT
      BECAUSE THE SENECA OPERATING AGREEMENT OBLIGATED
      NEUMANN TO DISTRIBUTE AVAILABLE CASH AND NEUMAN
      REFUSED TO MAKE SUCH DISTRIBUTION…………………………………………9

      A.    The Seneca Operating Agreement Obligation to Distribute Available
            Cash Prevails Over the Charter's Conflicting Requirement That Money
            Not Be Distributed Without The Written Consent of Omnicom…………………9

      B.    Defendant Has Misled This Court Concerning the Relevant Provisions
            of Seneca's Constituent Documents…………………………………………..11

II.   PLAINTIFF HAS PLED AN ACTION FOR BREACH OF THE IMPLIED
      COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE THE
      COMPLAINT PLEADS THAT NEUMAN IN BAD FAITH REFUSED TO FOLLOW
      THE DEMANDS OF SENECA'S CHIEF EXECUTIVE OFFICER TO DISTRIBUTE
      AVAILABLE CASH TO SHAREHOLDERS………………………………………..13

III.  PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM FOR BREACH OF
      FIDUCIARY DUTY BECAUSE DELAWARE LAW AND SECTION 1.2 (c) OF THE
      SENECA OPERATING AGREEMENT DO NOT ABSOLVE DEFENDANT OF
      LIABILITY FOR BAD FAITH ACTS OR INTENTIONAL MISCONDUCT…………14

IV.   PLAINTIFF HAS ADEQUATELY PLED CONVERSION, AND IS ENTITLED TO
      DISCOVERY TO PROVE HIS CONVERSION CLAIM……………………………....16

V.    THERE ARE FUNDAMENTAL FACTUAL ISSUES REGARDING WHETHER
      OMNICOM DID OR DID NOT INSTRUCT NEUMANN TO CEASE MAKING
      DISTRIBUTIONS OF CASH, AND ACCORDINGLY THE COURT SHOULD
      PERMIT THE COMPLETION OF DISCOVERY PRIOR TO DECIDING THE
      MOTION AND PRIOR TO CONSIDERING A REPLEADED COMPLAINT…..........18

CONCLUSION………………………………………………………………………..20

TABLE OF AUTHORITIES

Page

<u>Cases</u>

*ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87, 98 (2d Cir. 2007)……………………………………………………………8

*Bell Atl. Corp. v. Twombly*,
    ___ U.S. ___, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)……………………………..8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir.  2002)……………………………………………………………9

*Cornett v. NBC Weather Plus, LLC*,
    856 N.Y.S.2d 497 (N.Y. Sup. Ct. Nassau Co. 2008……………………………………..10

*E. Consol. Props., Inc. v. Adelaide Realty Corp.*,
    261 A.D.2d 225, 230 (1st Dep't 1999)……………………………………………...13

*Jeremy's Ale House Also, Inc. v. The Joselyn Luchnick Irrevocable Trust*,
    22 A.D.3d 6 (1st Dep't 2005)……………………………………………………………13

*Krijn v. Pogue Simone Real Estate Co.*,
    896 F.2d 687, 690 (2d Cir. 1990)……………………………………………………9

*Livant v. Clifton*,
    2008 U.S. App. LEXIS 7377 at *2 (2d Cir. 2008)……………………………………...8

*McCall v. Scott*,
    239 F.3d 808, 818-19 (6th Cir. 2001)……………………………………………………15

*Republic of Haiti v Duvalier*,
    211 A.D.2d 379, 384 (1st Dep't 1995)……………………………………………...17

*Rozsa v. May Davis Group, Inc.*
    152 F. Supp 2d 526 (S.D.N.Y. 2001)……………………………………………………16

*Ruotolo v. City of New York*,
    514 F.3d 184, 188 (2d Cir. 2008)……………………………………………………8

*Stendig, Inc. v. Thom Rock Realty Co.*,
    163 A.D.2d 46, 48  (1st Dep't 1990)……………………………………………………13

*Wieder v. Skala*,
    80 N.Y.2d 628, 637 (1992)……………………………………………………………13

<u>Statutes</u>

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………..8-9

Fed. R. Civ P. 12(c)……………………………………………………………………8-9

Fed. R. Civ P. 12(d)……………………………………………………………………8-9

8 Del. C. Section 102(b)(7)…………………………………………………………...15

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Michael P. Tierney, by his attorneys, respectfully submits this memorandum of law in opposition to Defendant's motion for judgment on the pleadings.

### PRELIMINARY STATEMENT

Plaintiff is seeking damages from Defendant Gerard A. Neumann ("Neumann") based on his illegal refusal to distribute cash owed to Plaintiff in his capacity as a 40% shareholder of Seneca Investments LLC ("Seneca"). [1]

Neumann does not and can not deny that:

-- At all relevant times he was Seneca's Chief Financial Officer, and had sole control over Seneca's bank account, cash and financial records.

-- The plain language of Seneca's Restated Operating and Organization Agreement dated March 31, 2004 (the "Operating Agreement") requires that shareholder distributions of available cash be made for each fiscal year.[2]

-- Neumann, as recently as December of 2007, acknowledged in writing that "Seneca's governing documents mandate a distribution of excess cash annually."

-- Neumann regularly made shareholder distributions of available cash, as required under the Seneca Operating Agreement, until he suddenly refused to do so for unspecified reasons in 2007.

---

[1]    The other two shareholders of Seneca at all relevant times were Neumann (20%) and Omnicom Group, Inc. ("Omnicom") (40%).

[2]    The Operating Agreement is attached as Exhibit 1 to Neumann's May 21, 2008 Declaration filed in support of his motion.  (Hereafter, "Neumann Decl.")

-- During 2007 Seneca had virtually no expenses, and had available for distribution to shareholders over $2,000,000 in cash and over $30 million of liquid securities.

-- Plaintiff is seeking no special treatment for himself, or anything other than pro-rata distribution of Seneca's available cash to all shareholders. (By contrast, Neumann has apparently organized a transaction with Omnicom effectively achieving a sizable distribution to himself, while continuing to prevent Plaintiff from receiving any distribution.)

Neumann can not and does not deny any of the foregoing. Rather, his apparent and sole "justification" for his sudden refusal to make shareholders distributions in 2007 is a disingenuous and after-the-fact reliance on Section 6(d)(ix) of the Amended Seneca Charter, also dated March 31, 2004 (the "Charter"). [3] That section of the Charter provides that any payment from Seneca to a stockholder shall require the prior written consent of Omnicom.

However, the Charter's requirement of a written consent from Omnicom is inoperable and void because it directly conflicts with the Operating Agreement's requirement that all available cash be distributed to shareholders. It is void because the Charter specifically states that the Operating Agreement obligations will prevail where there is a conflict between the Operating Agreement and the Charter. Section 18 of the Seneca Charter states that:

> In the event of an inconsistency between this Charter or the Bylaw and the LLC Agreement, the LLC Agreement will prevail. (Neumann Declaration at Exh. 2, Section 18 at p.7)

This key provision was not even mentioned in Defendant's Brief. The facts demonstrate that Neumann's reliance on Section 6(d)(ix) of the Charter for his failure to discharge his responsibilities is baseless:

---

[3]    The Charter is attached as Exhibit 2 to the Neumann Declaration.

-- There are two principal governing documents for Seneca – the Operating Agreement and the Charter. Section 18 of the Charter explicitly provides that, in the event of inconsistency between the Charter and the Operating Agreement, the Operating Agreement shall prevail.  Section 6(d)(ix) of the Charter contradicts Section 2.2 of the Operating Agreement, which categorically requires that available cash be distributed to shareholders.  Therefore, the plain reading of the Seneca governing documents required Neumann to make pro-rata shareholder distributions, and no shareholder was in a position to veto such distributions.

-- Seneca obtained, and provided Neumann with, a legal opinion confirming that he was obligated to make shareholder distributions under the Seneca governing documents, and that no shareholder could veto such a pro-rata distribution.   Similarly, Seneca's outside tax advisors confirmed their reading of the Seneca governing documents that Neumann was obligated to distribute available cash to shareholders.

-- Neumann admits to having distributed cash to Seneca shareholders under Section 2.2 of the Operating Agreement at least twice in 2006.  He did so without seeking, or receiving, prior written consent from Omnicom for such distributions.

-- Besides shareholders distributions, Neumann made many payments to himself and other Seneca stockholders since March 31, 2004 and through the end of 2007.   Again, he appears never to have sought or received prior written consent from Omnicom for any of these payments, whether under Section 6(d)(ix) of the Charter or otherwise.

--  As recently as December of 2007, Neumann specifically admitted in writing that Seneca's governing documents require the distribution to shareholders of excess cash, and that no consent from Omnicom is necessary for such distributions.

--  Neumann suggests in his Memorandum of Law that Omnicom at some point instructed him not to make any shareholder distributions.  However, Plaintiff has never seen such instructions, nor has Neumann produced them.  (Indeed, in his answer, Neumann denies that Omnicom gave him any such instructions.)

At the eleventh hour – only a few weeks before discovery is scheduled to end in this case, and only a few days before Defendant himself served notice of Plaintiff's deposition – Neumann has filed a motion for judgment on the pleadings.  Both Plaintiff's and Defendant's depositions have been noticed, and Plaintiff Tierney's deposition has already been taken.[4]  Neumann has refused to produce documents responsive to certain document requests from Plaintiff to Defendant – relating principally to the recently uncovered clandestine and highly suspicious transaction between Neumann and Omnicom whereby Neumann appears to have received a *de-facto* distribution from Seneca – and Tierney is in the process of making a motion to compel such documents.

The complaint adequately pleads causes of action for breach of contract, breach of fiduciary duty and conversion, and has raised numerous issues of fact.  Central to this case are the fundamental factual questions of (i) what instructions if any Omnicom gave to Neumann regarding shareholder distributions, (ii) when and in what form such instructions were given, (iii) what basis Neumann felt he had for acting on such instructions and ignoring the plain language of the Operating Agreement, (iv) why Neumann regularly made shareholder distributions and

---

[4]     Plaintiff's deposition was taken  June 12, and Defendant's deposition is scheduled  for June 18.

other payments to Seneca shareholders without prior written consent from Omnicom; (v) why Neumann admitted in December of 2007 that no Omnicom consent was necessary for shareholders distributions; and (vi) what compensation or other consideration Neumann may have received from Omnicom in February of this year in exchange for refusing to make pro-rata distributions to Plaintiff.

Thus the court should not dismiss the action on the pleadings, and at a minimum should grant Plaintiff leave to replead.

## SUMMARY STATEMENT OF THE ALLEGATIONS OF THE COMPLAINT

Seneca Investments LLC ("Seneca") is a Delaware limited liability company formed by Omnicom Group Inc. in May of 2001. At all times its offices have been in New York County, New York. Omnicom Group Inc. ("Omnicom") is a large publicly traded company engaged in the advertising business. The formation of Seneca is the subject of a large federal securities fraud litigation against Omnicom and certain of its senior officers in the Southern District of New York. None of Seneca, Plaintiff or Neumann is a party in that securities fraud litigation. (Compl. ¶¶ 6 – 8.) (A copy of the Complaint is attached hereto as Exhibit A. It has a New York State Court Caption because the action was removed to this Court. A copy of the answer is attached as Exhibit B).

At all relevant times, Plaintiff was the Chief Executive Officer of Seneca, and Neumann the Chief Financial Officer of Seneca; they were Seneca's only two officers. At all relevant times, Neumann controlled all Seneca's bank accounts and cash distributions to shareholders. (Compl. ¶¶ 9 – 10.)

On March 31, 2004, Omnicom restructured the ownership of Seneca so that the equity of Seneca was beneficially owned 40% by Omnicom, 40% by Plaintiff and 20% by Neumann. As a

result of that restructuring, Seneca also owed Omnicom a $24 million Note.  Omnicom then asked Plaintiff and Neumann to liquidate all Seneca's assets on reasonable terms and use the proceeds to repay the $24 million note to Omnicom, and then to distribute any remaining amounts to the shareholders. (Compl. ¶¶ 11 – 12.)

Sometime in 2004, Omnicom transferred all of its financial interest in the equity of Seneca to the Wharton Business School at the University of Pennsylvania. (Compl. ¶ 13.)

Seneca proceeded to liquidate its assets on reasonable terms.  By April of 2006, Seneca had repaid all of the $24 million Note to Omnicom.  Defendant Neumann made shareholder distributions in April and November of 2006. (Compl. ¶ 14.)  In January of 2007, Seneca exercised warrants on a publicly traded stock, resulting in a paper profit of approximately $4 million.  Since Seneca is a "tax pass-through" entity, its shareholders are taxed on this profit whether or not they receive funds from Seneca. (Compl. ¶15.)

In February of 2007, Plaintiff filed a lawsuit against Omnicom in Federal Court in the Southern District of New York.  That lawsuit seeks payment by Omnicom for the value of various stock options issued by Omnicom to Plaintiff.  Immediately after the filing of that lawsuit, Omnicom instructed Neumann not to make any further shareholder distributions to Plaintiff.  Since that time, Neumann has wrongfully refused to make any distributions to Plaintiff. (Compl. ¶¶ 16 – 18.)

Seneca's March 31, 2004 Operating Agreement explicitly requires the distribution of available cash to shareholders.  The Seneca Operating Agreement specifically states in Section 2.2:

> Distributions of available cash for any Fiscal Year shall be made to the Stockholders in accordance with the number of Common Shares held by each.

In addition, Section 2.1(b) of the Seneca Operating Agreement requires at a minimum that Seneca distribute a cumulative Tax Distribution to each shareholder to cover their tax liability. (Compl. ¶¶ 19 – 21.)

Plaintiff, as Seneca's CEO, has explicitly and repeatedly instructed Neumann to make shareholders' distributions of available cash.  Neumann asked Plaintiff to obtain a legal opinion to the effect that shareholder distributions were required under the Seneca corporate documents. Plaintiff therefore, on behalf of Seneca, asked the law firm of Burke Mackay Warren and Serittella ("Burke Mackay) to review the Seneca corporate documents and issue their opinion. Burke Mackay conducted their review, and confirmed in a written opinion that the Seneca corporate documents require distribution of available cash to shareholders.  (Burke Mackay, with Neumann's approval, had represented Seneca on other matters as well.)  Plaintiff also asked Seneca's longstanding tax advisors for its opinion as to the requirements of the Seneca corporate documents regarding shareholders distributions.  Those advisors, Farkouh, Furman & Faccio, confirmed to Seneca its interpretation of the Seneca corporate documents as calling for distribution to shareholders of all available cash. (Compl. ¶¶ 22 – 28.)

At all relevant times, Seneca's only assets were cash, publicly traded stock and a single private investment.  Its cash balances exceeded $2,000,000.  Seneca has and had no corporate need for the cash it holds.  It has no paid employees, and pays no management or other fees, nor did it during 2007.  It has and had virtually no expenses or liabilities. (Compl. ¶¶ 29 – 30.)

Plaintiff's share of the Seneca cash in 2007 was in excess of $800,000.  Neumann refused to distribute this amount to Plaintiff despite (a) Plaintiff's clear instructions to him to do so; (b) the fact that Neumann made similar shareholder distributions in April and November of 2006; (c) the unequivocal legal opinion of Burke Mackay, requested by Neumann, confirming that he is required to make that distribution; (d) the unequivocal opinion of Seneca's

longstanding tax advisors that Neumann is required to make that distribution; and (e) the fact that Seneca has no requirement for such cash. (Compl. ¶¶ 31 – 32.)

In refusing to make a distribution to Plaintiff, Neumann is illegally conspiring with Omnicom to intimidate and harm Plaintiff because of Plaintiff's lawsuit against Omnicom seeking to recover the value of stock options. (Compl. ¶ 33.)

## STANDARD APPLICABLE TO MOTION FOR JUDGMENT ON THE PLEADINGS

In deciding a Fed. R. Civ. P. Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion under Fed. R. Civ. P. 12(b)(6). *Livant v. Clifton*, 2008 U.S. App. LEXIS 7377 at *2 (2d Cir. 2008). On a motion to dismiss the complaint on the pleadings pursuant to Fed. R. Civ. P. 12 (c), the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,    U.S.    , 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Id.

Here, Defendant has attached over 100 pages of documents to its motion to dismiss, many of which are not referenced in the complaint.  Accordingly, the Court may not consider these documents unless it converts the motion to one for summary judgment and provides Plaintiff reasonable notice of the conversion and an opportunity to respond.  Fed. R. Civ P. 12(d) ("(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion."). *See Krijn v. Pogue Simone Real Estate Co.,* 896 F.2d 687, 690 (2d Cir. 1990) (holding that plaintiff not provided adequate notice of conversion of 12(c) motion to motion for summary judgment); *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)(reversing dismissal because court considered documents outside of the complaint).


## ARGUMENT

I.   **PLAINTIFF HAS PLED AN ACTION FOR BREACH OF CONTRACT BECAUSE THE SENECA OPERATING AGREEMENT OBLIGATED NEUMANN TO DISTRIBUTE AVAILABLE CASH AND NEUMAN REFUSED TO MAKE SUCH DISTRIBUTION**

   A.   **The Seneca Operating Agreement Obligation to Distribute Available Cash Prevails Over the Charter's Conflicting Requirement That Money Not Be Distributed Without The Written Consent of Omnicom**

Seneca's governing documents comprise a Restated Organization and Operating Agreement (the "Seneca Operating Agreement") and a Restated Charter (the "Seneca Charter"), each dated March 31, 2004. (Declaration of Neumann at Exhs. 1 and 2). The Seneca Operating Agreement requires unconditionally and in plain language that Seneca's available cash be distributed.

Section 2.2 of the Seneca Operating Agreement states that:

> "Distributions of available cash for any Fiscal Year shall be made to the Stockholders in accordance with the number of common shares held by each." (Neumann Declaration at Exh. 1.)

Section 6(d)(ix) of the Seneca Charter states that:

> "So long as any outstanding shares of Common Stock are held by Omnicom, notwithstanding any provision in any other Constituent Document, the Company will not, without first having obtained Omnicom's prior written consent . . . pay or distribute funds to Stockholders…" (Neumann Declaration at Exh. 2.)

9

Section 18 of the Seneca Charter states that:

> In the event of an inconsistency between this Charter or the Bylaw and the LLC Agreement, the LLC Agreement will prevail. (Neumann Declaration Exh. 2, section 18 at p. 7)

Here, the unconditional directive of the Seneca Operating Agreement (referred to as the LLC Agreement) to distribute available cash is directly inconsistent with the Charter provision indicating that cash may not be distributed without the consent of Omnicom.  Accordingly, the LLC Agreement's obligation to distribute cash prevails, unhindered by the language of the Charter.  Thus the Seneca Operating Agreement clearly obligated Neumann to distribute available cash, and the Complaint has sufficiently alleged a claim for breach of contract by alleging that Neumann in breach of the Seneca Operating Agreement failed and refused to distribute Seneca's available cash.  *See Cornett v. NBC Weather Plus, LLC*, 856 N.Y.S.2d 497 (N.Y. Sup. Ct. Nassau Co. 2008) (court enforced clause in letter agreement which indicated that the letter agreement terms prevailed over any inconsistent terms in the incorporated "Standard Provisions" contract).

The Seneca governing documents are absolutely clear and Defendant Neumann has admitted the unequivocal requirement to distribute available cash.  In fact, Tierney obtained an expert legal opinion indicating that Seneca's governing documents required Seneca to distribute is available cash.  (Compl. ¶ 25)

If Plaintiff were required to replead its complaint, it will replead that Defendant Neumann sent an email to Michael Tierney on December 26, 2007 admitting that distributions were required and stating specifically, "As you know, Seneca's governing documents mandate a distribution of excess cash annually."

Even if it were assumed that the Seneca Operating Agreement required Omnicom's written consent, the lack of the written consent constitutes a defense which Neumann has the burden to prove. Here, there is an issue of fact as to whether Omnicom did in fact give a written consent. As alleged in the complaint, Neumann often made shareholder distributions and other payments to shareholders. Plaintiff is entitled to learn during discovery whether he had consent from Omnicom to do so, or what other basis he relied on in making such payments in light of his assertion that his sudden refusal to make shareholder distributions is justified by Section 6(d)(ix) of the Charter. Moreover, since the filing of the complaint, Omnicom has provided to Seneca written consent by letter dated September 27, 2007 for all distributions authorized by the Seneca Board of Directors, and the distributions at issue in this action have been authorized by the majority of the Seneca Board of Directors. Thus, Omnicom's written consent was obtained and Neumann nevertheless continued to refuse to distribute available cash.

Neumann's reliance on alleged instructions from Omnicom not to distribute the available cash is misplaced and should not be considered by the Court as Neumann in his Answer denied the allegation in the Complaint that Omnicom has instructed him to cease making any further distributions, and there is no documentary evidence produced to date demonstrating that Omnicom instructed Neumann not to make any distributions of available cash. At a minimum, Plaintiff should be permitted to replead the complaint to replead the allegations related to Omnicom's instructions to Neumann.

## B. Defendant Has Misled This Court Concerning the Relevant Provisions of Seneca's Constituent Documents

Defendant argues that, even if Omnicom instructed him not to make any distributions – a fundamental factual issue, as stated above – Section 6(d)(ix) of the Seneca Charter protected him in failing to make such a distribution. Specifically, Defendant relies on the language in this

section of the Charter requiring Omnicom to provide its prior written consent prior to paying

funds to Seneca stockholders.  Defendant goes on to argue that, since Omnicom did not provide

its prior written consent, Neumann was under no obligation to effect the shareholder

distributions.  In making this argument, Defendant inexcusably fails to bring to the Court's

attention the two other provisions of the Seneca constituent documents which are more germane

to the issue and which demonstrate that Neumann had a clear and direct obligation to distribute

available cash flow.  *See Supra*.

Thus, any inconsistency arising between Section 6(d)(ix) of the Charter  -- now

exclusively relied on by Neumann for his failure to make shareholder distributions -- and Section

2.2 of the Operating Agreement must be resolved in favor of Section 2.2 of the Operating

Agreement, which specifically and in plain language requires such distributions.  Although

Defendant neglects to mention these clauses to the Court, he was well aware of them since

Seneca obtained and provided Neumann a written legal opinion confirming that the Seneca

constituent documents required shareholders distributions. Seneca's tax advisors also provided to

Neumann their opinion to the same effect.  (Compl. ¶¶ 22 - 28.)

At the very minimum, Defendant's suggestion that Section 6(d)(ix) of the Charter is

dispositive for purposes of its motion to dismiss is baseless.  Section 2.2 of the Seneca Operating

Agreement provides a clear and unambiguous contractual obligation to make shareholders

distributions – distributions which Defendant admittedly made through the end of 2006, and

which he admitted he should make in 2007.  And, as indicated, any conflict arising because of

Section 6(d)(ix) of the Charter – now cynically and suddenly relied upon by Neumann -- must be

resolved in favor of the Operating Agreement pursuant to Section 18 of the Charter.

II.   **PLAINTIFF HAS PLED AN ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE THE COMPLAINT PLEADS THAT NEUMANN IN BAD FAITH REFUSED TO FOLLOW THE DEMANDS OF SENECA'S CHIEF EXECUTIVE OFFICER TO DISTRIBUTE AVAILABLE CASH TO SHAREHOLDERS**

The Chief Executive Officer of Senenca "explicitly and repeatedly instructed Neumann to make shareholder's distributions of available cash." Complaint at ¶ 22. despite these instructions, Neumann has refused to distribute the available cash to shareholders. Complaint at ¶ 32-33. These allegations demonstrate a breach of Neumann's implied obligation to follow the instructions of the Chief Executive Officer of Seneca.

Furthermore, if Plaintiff were required to replead the complaint, Plaintiff would allege that Neumann in bad faith breached his implied covenant of good faith and fair dealing by concealing his communications with Omnicom relevant to the distribution of available cash and if a written consent does not exist, made no material attempt to obtain the written consent. *See Jeremy's Ale House Also, Inc. v. The Joselyn Luchnick Irrevocable Trust,* 22 A.D.3d 6 (1st Dep't 2005) (holding that refusal to transmit terms of sale to which right of first refusal applied constituted a breach of the implied covenant of good faith and fair dealing) (*citing Wieder v. Skala*, 80 N.Y.2d 628, 637 (1992); *E. Consol. Props., Inc. v. Adelaide Realty Corp.*, 261 A.D.2d 225, 230 (1st Dep't 1999) (holding that where a contracting party conditions the contract on the transfer of a title, that party "implicitly promised to use his good faith best efforts to bring about this result") (quotation marks omitted); *Stendig, Inc. v. Thom Rock Realty Co.*, 163 A.D.2d 46, 48 (1st Dep't 1990) ("The express language of the condition [may] give rise to the implied language of promise."). Accordingly, Plaintiff has sufficiently pled a cause of action for breach of the implied covenant of good faith and fair dealing. Accordingly, this claim should not be dismissed, and if dismissed, Plaintiff should be permitted to replead this claim.

**III.      PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM FOR BREACH OF FIDUCIARY DUTY BECAUSE  DELAWARE LAW AND SECTION 1.2 (c) OF THE SENECA OPERATING AGREEMENT DO NOT ABSOLVE DEFENDANT OF LIABILITY FOR BAD FAITH ACTS OR INTENTIONAL MISCONDUCT**

Neumann argues that, under Section 1.2(c) of the Operating Agreement, Plaintiff has waived any claims for breach of fiduciary duties against him for his failure to make shareholder distributions.  Here again, however, Defendant has played fast and loose in its citation to the court of the relevant contractual language.

Defendant neglected to quote the portion of Section 1.2(c ) which specifically recognizes fiduciary obligations relating to, and imposes liability for, "… losses that resulted directly and solely from (1) the intentional breach of the Constituent Documents…"   Of course, that is precisely what Plaintiff alleges here – that Neumann willfully refused to make shareholder distributions; that he willfully refused to do so despite the clear language of the Seneca Operating Agreement; that he willfully refused to do so despite his previous practice of making such distributions; that he willfully refused to do so despite the instruction of Seneca's Chief Executive Officer to make such distributions; and that he willfully did so despite the unambiguous legal opinion of an outside law firm to Seneca and the outside tax advisors to Seneca that he should make such distributions.

Section 1.2(c) of the Seneca Operating Agreement specifically states:

> (c) Directors, officers, controlling Persons (if any) and direct and indirect holdes of the Common Stock of the Company (collectively, "Stockholder's Persons") will not have any duty, fiduciary or otherwise, to any entity comprising the Company Group, other stockholders or any other Person or any of each of their respective Affiliates.  Stockholders' Persons will not be personally liable to any entity cpomprising the Company Group, other stockholders or any other Person for any actual or alleged action or inaction taken or not taken on behalf of any entity comprising the Company Group, except for losses that resulted directly and solely from (1) the intentional breach of the Constituent Documents or (2) an action that a court of competent jurisdiction finally determines in an order or opinion not subject to further appeal constituted an intentional and willful violation of law .  . .

14

Defendant's suggestion that Section 1.2(c) of the Operating Agreement somehow absolves him of his fiduciary obligations to comply with Seneca's constituent documents is simply wrong – and belied by language in that very section which Defendant deliberately has neglected to cite to the Court.

Moreover, under Delaware law, a company cannot absolve its directors and officers from liability from intentional bad faith acts, and the complaint clearly alleges that Neumann's conduct constituted intentional bad faith acts.

Delaware General Corporation Law allows a company's shareholders to adopt a provision in the certificate of incorporation that eliminates the directors' personal liability for a breach of fiduciary duty, except:

> For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) or acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 174 of this title (prohibiting unlawful payment of dividends. stock purchases and redemptions); or (iv) for any transaction from which the director derived an improper personal benefit. [8 Del. C. Section 102(b)(7).]

Specifically exempted from Section 102(b)(7) are breaches of fiduciary duty resulting from acts or omissions not in good faith or that involve a knowing violation of law. Plaintiff alleges that defendant Neumann intentionally breached his fiduciary duties in bad faith and thus the complaint sufficiently pleads a cause of action. *See McCall v. Scott*, 239 F.3d 808, 818-19 (6th Cir. 2001) (holding directors conscious disregard of a known risk is akin to an action not taken in good faith); accord Balotti & Finkelstein, Delaware Law of Corporations and Business Organizations Section 4.29 at 4-116 to 4-116.1 (3d ed. Supp. 2000). Since plaintiff is clearly proceeding under the theory that defendant acted in bad faith, Section 102(b)(7) cannot preclude plaintiff's claim.

IV.    **PLAINTIFF HAS ADEQUATELY PLED CONVERSION, AND IS ENTITLED TO DISCOVERY TO PROVE HIS CONVERSION CLAIM**

Plaintiff has met the five part standard set out in *Rozsa v. May Davis Group, Inc.* 152 F. Supp 2d 526 (S.D.N.Y. 2001) and quoted by Defendant. (Def. Memo p. 11.)   Specifically:

Plaintiff has alleged that Defendant harmed plaintiff through an actionable wrong other than breach of contract.   "Defendant intentionally and illegally interfered with Plaintiff's interest in the cash of Seneca." (Comp. ¶ 48.)   "In refusing to make a distribution to Plaintiff, Neumann is illegally conspiring with Omnicom to intimidate and harm Plaintiff because of Plaintiff's lawsuit against Omnicom seeking to recover the value of stock options." (Comp. ¶ 33; see also Comp. ¶¶ 16 - 18.)  (Indeed, it now appears that that conspiracy between Neumann and Omnicom has extended to the secretive payment to Neumann by Omnicom for his resignation as a director and officer of Seneca, and his transfer of some or all of his Seneca shares to Omnicom. This highly suspicious transaction – the details of which Neumann and Omnicom refuse to divulge – was concluded shortly after Neumann admitted that he should be making shareholder distributions.  (Neumann Decl. ¶1))

Plaintiff had ownership of the funds at the time they were converted.   Plaintiff specifically alleges – and Neumann does not seriously deny -- that Plaintiff owned 40% of the common equity of Seneca, and that as such he owned 40% of the available cash of Seneca. (Comp. ¶¶ 11, 29 – 32.)

Defendant exercised unauthorized dominion over the funds.   Plaintiff specifically alleges that Defendant "Neumann controls all Seneca's bank accounts and cash distributions to shareholders." (Comp. ¶ 10.)   The Complaint also alleges with specificity that Plaintiff, as Seneca's Chief Executive Officer, repeatedly instructed Defendant to make the shareholders distributions required under the Seneca constituent documents, but that he refused to do so. (Comp. ¶¶ 22- 32.)   Nowhere in his answer or otherwise does Defendant indicate who else but

16

he had "dominion" over Seneca's cash.  He cannot, since he alone had such control.  Discovery

will show that Defendant wrote all checks on Seneca's accounts, that he was the sole signatory

on those accounts, that he alone paid all distributions in 2006 to shareholders.

The funds were specific and identifiable. (Comp. ¶¶ 29- 31.)   Defendant does not and

can not seriously contend that Seneca's cash balances were not specific and identifiable.

Discovery will show that Seneca maintained one bank account, and that the cash in that account

was at all times easily ascertainable.

*See, e.g., Republic of Haiti v Duvalier,* 211 A.D.2d 379, 384 (1st Dep't 1995) ("The tort

of conversion is established when one who owns and has a right to possession of personal

property proves that the property is in the unauthorized possession of another who has acted to

exclude the rights of the owner.  Where the property is money, it must be specifically

idenitifiable and be subject to an obligation to be returned or to be otherwise treated in a

particular manner. The funds of a specific, named bank account are sufficiently identifiable*")

(citations omitted).*

Defendant was to treat the funds in a particular manner, but they were not so treated.

Here again, this is precisely what Plaintiff alleges –  that Neumann was required by the Seneca

constituent documents to distribute Seneca's available cash to the shareholders; that such

available cash thus belonged to the Seneca shareholders, and that Plaintiff's 40% of such

available cash belonged to him; that Neumann recognized that such funds belonged to the Seneca

shareholders since he had distributed available cash in the past to them; and that in 2007 he

suddenly and without justification refused to distribute Seneca's then available cash. (Comp. ¶¶

12, 14, 18 – 28,  32 - 33.)

Neumann interfered with the Seneca's shareholders' right to their cash distributions from

the Seenca bank account by refusing to carry out the instructions of Seneca's Chief Financial

Officer and by concealing his communications with Omnicom from Seneca's Chief Executive

Officer in direct breach of his duties.

**V.    THERE ARE FUNDAMENTAL FACTUAL ISSUES REGARDING WHETHER OMNICOM DID OR DID NOT INSTRUCT NEUMANN TO CEASE MAKING DISTRIBUTIONS OF CASH, AND ACCORDINGLY THE COURT SHOULD PERMIT THE COMPLETION OF DISCOVERY PRIOR TO DECIDING THE MOTION AND PRIOR TO CONSIDERING A REPLEADED COMPLAINT**

Neumann rests virtually the entire weight of his very late motion for judgment on the

pleadings on Section 6(d)(ix) of the Seneca Charter – a provision which by its terms requires the

prior written consent of Omnicom to virtually any payment by Seneca to a Seneca stockholder.

In doing so, Neumann misstates critical matters to the Court, omits others and ignores critical

issues of fact which he himself has raised.

For example, the Complaint, ¶ 17, alleges that "immediately after the lawsuit, Omnicom

instructed Neumann not to make any further distribution to Plaintiff." In its answer, Defendant

flatly denies paragraph 17 of the Complaint. (Ans. ¶ 17.) In other words, Defendant contends in

its answer that Omnicom did not instruct Neumann to cease making shareholder distributions.

However, Neumann's central argument in its motion for judgment on the pleadings is that

"defendant's compliance with Omnicom's direction not to distribute Seneca's cash did not

breach Seneca's Operating agreement".[5] By denying that Omnicom instructed Neumann not to

make distributions, Defendant has established a fundamental factual issue – whether in fact

Omnicom issued any such instructions. Of course, if Omnicom did not issue any instructions,

Neumann by his own admission in his motion papers had no basis to cease making shareholder

distributions. If Omnicom did give Neumann such instructions, Plaintiff is certainly entitled to

---

[5]    Defendant's Memorandum of Law In Support Of Its Motion For Judgment On The Pleadings, page 5. (Hereafter, "Def. Memo.")

discover the terms, timing and other details of such instructions, and why Neumann suddenly and selectively decided to follow them for some payments, and apparently not for others.

Similarly, Neumann admits in his Answer that he made shareholder distributions in April and November of 2006.  (Ans. ¶ 17.)   Moreover, Neumann made many other payments from March 31, 2004 through the end of 2007 to Seneca shareholders. Suddenly, commencing in 2007, Neumann refused to make any more shareholder distributions on behalf of Seneca.  (On the other hand, he continued to make payments in 2007 on behalf of Seneca to himself and other Seneca shareholders, apparently without the prior written consent of Omnicom.)  Plaintiff is certainly entitled to complete discovery to learn on what basis Neumann made shareholder distributions in April and November of 2006, but suddenly refused to make them commencing in 2007.  Similarly, Plaintiff is entitled to learn in discovery whether Omnicom provided its written consent for other payments made by Neumann to himself and other Seneca stockholders since March 31, 2004 or, if no such consent was provided, the basis on which Neumann made such payments.

Another fundamental factual issue – if not dispositive in Plaintiff's favor – is Neumann's written effective admission in December of 2007 that the Seneca constituent documents required a distribution of cash to shareholders, regardless of whether Omnicom "consented" to such distribution or not.  By e-mail to Plaintiff dated December 12, 2007, Neumann conceded:

> As you know, Seneca's governing documents mandate a distribution of excess cash annually. While there may be some disagreement between the parties over what "annually" means, I think we can all agree that once a full year has gone between our denied request to distribute--early last year--the definition of annual has a some point been triggered.

This email is not before the Court on this motion because the motion relates only to the pleadings.  The email is referenced merely to show the facts that may be repleaded if repleading were required.

19

Finally, it has recently come to the attention of Plaintiff that Neumann clandestinely received a substantial payment from Omnicom in connection with his alleged resignation as a director and officer of Seneca in late February 2008, and the transfer of his shares in Seneca. Omnicom and Neumann apparently negotiated this highly suspicious transaction in early 2008, just after Neumann had acknowledged that he should execute shareholder distributions (but refused to do so). See Declaration of Neumann at ¶ 1.

So far, however, all of Neumann, Seneca and Omnicom refuse to provide any information concerning this "transaction" except to confirm that it took place. Neumann's motion papers call this arrangement between Neumann and Omnicom "a settlement agreement resolving certain disputes between them." (Def. Mem., p.2, footnote 1.) Presumably, the "disputes" concerned Neumann's actions or inactions as an officer and director of Seneca and, as such, are likely to be highly relevant to Plaintiff's allegations in the present action. Plaintiff is unaware of any such disputes, and is entitled to understand their nature through discovery.


**CONCLUSION**

Plaintiff has sufficiently pled causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and conversion. Accordingly, Defendant's motion to dismiss on the pleadings should be denied.

In Defendant's motion is granted with respect to any claims, Plaintiff requests that the court permit Plaintiff to replead his Complaint.

Dated: New York, New York
June 13, 2008

LAW OFFICE OF WILLIAM COUDERT RAND

S/William C. Rand

William Coudert Rand, Esq. (WR-7685)
711 Third Avenue, Suite 1505
New York, New York 10017
Tel: (212) 286-1425
Attorney for Plaintiff

To:

Janet A. Masimore (JM-8165)
Hughes, Hubbard & Reed LLP
One Battery Park Plaza
New York, N.Y. 10004-1482
(212) 837-6000