UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL P. TIERNEY,

                           Plaintiff,

        -against-

GERARD A. NEUMANN,

                          Defendant.

Index No.: 07-cv-4090-BSJ-JCF

### DEFENDANT GERARD A. NEUMANN'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING THE COMPLAINT

HUGHES HUBBARD & REED LLP
Christopher Paparella
Jason A. Masimore
William J. Sanchez
One Battery Park Plaza
New York, New York 10004
Tel: (212) 837-6000
Fax: (212) 299-6804

*Attorneys for Defendant Gerard A. Neumann*

**PRELIMINARY STATEMENT**

Defendant Gerard A. Neumann submits this reply memorandum in further support of his motion to dismiss Plaintiff Michael P. Tierney's complaint. Plaintiff's complaint is based on his allegations that Defendant breached Seneca's Operating Agreement by complying with Omnicom's instruction not to distribute Seneca's cash. Defendant's moving papers showed that the complaint is groundless because the Charter, which is incorporated by reference into the Operating Agreement, gives Omnicom the exclusive right to disapprove Seneca distributions notwithstanding any other provision in Seneca's constituent documents. Plaintiff's answering memorandum ("Opp. Mem.") does not provide any reason to deny Defendant's motion.

Plaintiff's new and contradictory assertion that Omnicom did not object to a cash distribution lacks legal significance and is false. Plaintiff may not defeat Defendant's motion by offering new and contradictory allegations. Moreover, the evidence shows that Omnicom did, in fact, object to a cash distribution.

Plaintiff's assertion that Defendant's motion relies on documents not referenced in the complaint is equally incorrect. The Operating Agreement, and the documents incorporated therein, is the only document on which Defendant's motion relies, and is the basis of the complaint.

Plaintiff's assertion that the Operating Agreement provision for the distribution of available cash conflicts with and therefore supersedes Omnicom's right to consent to distributions misreads the Agreement. Seneca's Charter, which is part of the Operating Agreement, establishes Omnicom's right to consent to distributions notwithstanding any provisions in the Operating Agreement.

There is no merit to Plaintiff's argument that the duty of good faith obliged Defendant to comply with Plaintiff's demand for cash and to persuade Omnicom to drop its


objections. The duty of good faith does not supersede Omnicom's right to withhold approval of requested distributions nor does it require Defendant to persuade Omnicom to waive its right.

Plaintiff's argument that his breach of fiduciary duty claims are not eliminated by the Operating Agreement ignores specific language in the Operating Agreement that lawfully eliminates Defendant's fiduciary obligations.

Plaintiff's argument that he owned 40% of Seneca's cash because he holds 40% beneficial ownership of Seneca ignores the legal distinction between shareholders and their companies. His argument that Defendant exercised unauthorized control over Seneca's cash ignores, and is undermined by, his allegation in the complaint that Defendant was Seneca's chief financial officer.

Plaintiff's request for permission to replead is groundless. Plaintiff merely wishes to add to his complaint inadmissible extrinsic evidence allegedly contradicting the plain language of the Operating Agreement and Charter.

## ARGUMENT

### I.
### THE COURT MUST DECIDE THIS MOTION BASED ON THE ALLEGATIONS IN THE COMPLAINT AND THE SENECA OPERATING AGREEMENT

    A.    Plaintiff May Not Defeat Defendant's Motion By Offering New (and Unsupported) Allegations Contradicting His Complaint

The gravamen of the complaint is that Defendant breached his obligations to Plaintiff by refusing to distribute Seneca's cash without Omnicom's express, written authorization. (Complaint, ¶¶ 17-18.) Confronted with Omnicom's clear exclusive right under Seneca's Charter (which is part of the Operating Agreement) to withhold approval of any cash distribution, Plaintiff asserts in his brief that Omnicom instructed Defendant to make distributions of available cash. (Opp. Mem. At 4, 11.) Plaintiff tries to justify this about-face by

asserting that Defendant denied his allegations that Omnicom objected to a cash distribution. Plaintiff argues that Defendant's denial creates a fact dispute incapable of resolution on this motion. Plaintiff's arguments are meritless.

The Court must focus on the allegations in the complaint, not the denials in the answer, on a motion for judgment on the pleadings. Plaintiff cannot defeat such a motion by selectively disavowing the factual allegations in the complaint on which the motion is based or relying on denials in the answer to feign a fact dispute. In any event, Plaintiff mischaracterizes Defendant's denials. Defendant denied Plaintiff's allegation that "[i]mmediately after [Plaintiff commenced a lawsuit against Omnicom], Omnicom instructed Neumann not to make any further distributions to Plaintiff" for two reasons unrelated to Plaintiff's assertion. First, Omnicom objected to distributions to all parties, not just Plaintiff. Second, Defendant also denied it because Omnicom gave this instruction in February 2007, two months after Plaintiff first filed suit against Omnicom on December 11, 2006, and not "immediately after." (Complaint, ¶ 17; Opp. Mem. at 11,18-19.)

There is no factual dispute – none – that Omnicom instructed Neumann not to make any more distributions to shareholders. Plaintiff has alleged it; Plaintiff has twice sworn to it; Defendant has never denied it and does not now deny it; and the letter from Omnicom, which Plaintiff mis-cites, unequivocally confirms it.[1]

---

[1] Plaintiff's new unpled assertions, Opp. Mem. at 4, 11, are false, as Plaintiff has repeatedly admitted. If this case proceeds, evidence will be adduced to show the following: Omnicom advised Plaintiff in writing on February 16, 2007, that "Omnicom does not consent to any future payments or distributions of Seneca's funds, assets or securities." (Exhibit 1 to declaration of Jason A. Masimore ("Masimore Dec.").) Omnicom's September 27, 2007 letter to Plaintiff did not consent to any distributions as Plaintiff now alleges. (Masimore Dec., Exhibit 2.) Plaintiff admitted in his deposition in this case that he saw and was aware of instructions from Omnicom not to make the distributions that are the subject of his complaint. (Masimore Dec., Exhibit 3 (Tierney Dep. Tr. at 173:2-11; 307-10).) Plaintiff swore in an affidavit filed three days ago in another case that Omnicom instructed Defendant not to distribute cash. (Masimore Dec., Exhibit 4 at ¶¶ 12-13 (excerpts of June 24, 2008 affidavit).)

3

      B.    <u>Defendant's Motion Properly Relies on the Operating Agreement</u>

Plaintiff's assertion that Defendant's motion relies on documents not referenced in the complaint is incorrect. (Opp. Mem. at 8.)  The only documents submitted and relied on by Defendant are the Operating Agreement and the Charter, which is part of the Operating Agreement.  (*See* Neumann Declaration, Exhibits 1 and 2.)  Defendant's reliance on the Operating Agreement and the Charter is proper because the complaint refers to and relies on the Operating Agreement.  *See, e.g.*, *Cortec Indus, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (permitting consideration of a document on a motion to dismiss where plaintiff had relied on the terms and effect of that document in drafting the complaint).  This basic rule is not contradicted by the cases cited by Plaintiff.  *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 690 (2d Cir. 1990) (addressing improper use of factual affidavits, not reliance on the contract underlying the dispute);  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (finding that the district court properly considered the contracts underlying the dispute in dismissing the complaint).

## II.
## THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S CLAIMS

      A.    <u>Plaintiff Has Failed to Plead Breach of Contract</u>

Section 6(d)(ix) of the Charter precludes any distribution of Seneca's cash without Omnicom's prior written consent.  Recognizing that this provision is fatal to his claims, Plaintiff argues that section 2.2 of the Seneca Operating Agreement provides for the distribution of available cash and therefore conflicts with and supersedes Charter section 6(d)(ix).  (Charter section 18 provides generally that the Operating Agreement prevails in the event of an inconsistency between the Operating Agreement and the Charter.)

Plaintiff misses a key provision. Charter section 6(d)(ix), which gives Omnicom control of cash distributions, provides that such right exists "notwithstanding any provision in any other Constituent Document." (Neumann Dec., Exhibits 1 and 2, at GN0399.) The Seneca Operating Agreement is a "Constituent Document" (*see* Seneca Operating Agreement, at ¶ 3.13). Section 2.2 of the Operating Agreement is a provision of a Constituent Document, and even if it conflicts with Omnicom's right to control cash, which it does not, Omnicom's right prevails.

Although section 18 of the Charter provides generally that the Operating Agreement prevails in the event of an inconsistency with the Charter, Charter section 6(d)(ix) governs the specific issue of approvals of cash distributions, and it states unequivocally that it trumps the Operating Agreement on that issue. It is well settled that "[e]ven if there [is] an inconsistency between a specific provision and a general provision of a contract . . ., the specific provision controls." *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956). The single case cited by Plaintiff does not support his argument. The court did not apply the inconsistent terms clause in its decision in *Cornett v. NBC Weather Plus, LLC*, 856 N.Y.S.2d 497 (N.Y. Sup. Ct. 2008). Moreover, the contract in that case did not contain a clause that, like Charter section 6(d)(ix) here, is more specific than and overrides the generic inconsistent terms clause.

      B.      Plaintiff Failed to Plead a Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff argues that Defendant breached the implied covenant of good faith and fair dealing because Defendant had "an implied obligation to follow the instructions of the Chief Executive Officer of Seneca" to distribute Seneca's cash regardless of Omnicom's objection and regardless of the requirements of the Operating Agreement. Plaintiff also argues that Defendant breached the implied covenant because he "made no material attempt" to persuade Omnicom to

5

drop its objection to the cash distribution demanded by Plaintiff.  (Opp. Mem. at 13.)  These arguments are nonsensical.

Plaintiff cites no legal or other support for his argument that Defendant, as Seneca's CFO, had an implied duty to comply with all instructions given by Plaintiff regardless of Seneca's Operating Agreement.  Defendant did not have any obligation to follow Plaintiff's instructions where, as here, they violated the terms of Seneca's governing documents.  Nor does Plaintiff cite any support (and there is none) for his contention that Defendant had an obligation to Plaintiff to persuade Omnicom to withdraw its objection to Plaintiff's cash demand.

The cases cited by Plaintiff are not on point.  Those cases address the principle that a party who controls the occurrence of a condition precedent must use his good-faith best efforts to bring about such occurrence.  Here, Omnicom, not the Defendant, had the exclusive right to give its consent (or not) to cash distributions.  Defendant had no control over Omnicom's decision.  *See Stendig, Inc. v. Thom Rock Realty Co.*, 163 A.D.2d 46, 48 (N.Y. App. Div. 1990) ("Significantly, the complaint alleges that the event contemplated by the condition was entirely within the control of the landlord, the party alleged to be bound by the implied promise."); *cf. Jeremy's Ale House Also, Inc. v. The Joselyn Luchnick Irrevocable Trust*, 22 A.D.3d 6 (N.Y. App. Div. 2005) (granting leave to plead breach of implied duty and good faith where one party failed to provide information exclusively in its possession to the other).  The concurrence in *E. Consol. Props., Inc. v. Adelaide Realty Corp.*, 261 A.D.2d 225, 230 (N.Y. App. Div. 1999), cited by Plaintiff, states that a party only violates an implied duty to make best efforts where "the party charged with the duty to fulfill the condition has failed to make a good-faith effort to bring it about" or "the party resisting the contractual obligation has affirmatively acted to obviate its fulfillment."  *Id.* at 230.  None of those fact patterns is applicable here.

6

### C.     Plaintiff Has Failed to Plead Breach of Fiduciary Duty

Plaintiff's argument that section 1.2(c) of the Operating Agreement does not release Defendant's fiduciary obligations and that any such release is prohibited by Delaware General Corporation Law, Title 8, section 102(b)(7) ignores the language of the Operating Agreement and Delaware law.  (Opp. Mem. at 14-15.)  Section 1.2(c) of the Operating Agreement contracts out of fiduciary duties.  Further, Section 1.2(d) of the Operating Agreement (ignored by Plaintiff) provides that "[n]otwithstanding any other provision hereof, neither the Company nor any other Person will be subject to the provisions of DGCL Section[ ] 102(b)(7). . . ."  (Seneca Operating Agreement, ¶ 1.2(d) (Neumann Dec., Exhibit 1 at GN0386).)  These provisions are valid under Delaware law, which provides that "[a] limited liability company agreement may provide for the limitation of any and all liabilities for breach of contract and breach of duties (including fiduciary duties)."  6 Del. Code § 18-1101(e).

The only arguably relevant circumstance for which the Operating Agreement provides that one shareholder can be liable to another – intentional breach of contract – is not properly pleaded in the complaint.  (Seneca Operating Agreement, ¶ 1.2(c)(1) (Neumann Dec., Exhibit 1 at GN0386).)

The complaint does not state a claim for "intentional breach of the Constituent Documents" for two reasons.  First, the complaint does not state a claim for breach of contract, as noted above.  Second, section 1.2(c) of the Operating Agreement provides that a breaching party "will not be liable for any consequential, punitive or other damages."  In the event of an intentional breach, the breaching party is "obligated only to return or repay the actual pecuniary benefit [he] wrongfully received."  (Neumann Dec., Exhibit 1 at GN0386.)  The complaint's failure to plead any allegations that Defendant obtained a pecuniary benefit from his alleged breach is fatal to Plaintiff's breach of contract claim.  Rather than satisfying the pleading

requirements imposed by section 1.2(c), Plaintiff only seeks the types of damages to which he is specifically not entitled. (Complaint, ¶31-32, 37, 42, 47, 51-2; Seneca Operating Agreement, ¶ 1.2(c).)

        D.      <u>Plaintiff Failed to Plead Conversion</u>

Plaintiff's memorandum fails to articulate any basis for his conversion claim. Plaintiff's argument that he (and not Seneca) owned the funds allegedly converted because he owned 40% of Seneca, Opp. Mem. at 16, is contrary to long-settled law distinguishing between shareholders and their companies. *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. . . . An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets. . .") (citations omitted). Likewise, Plaintiff's assertion that Defendant exercised unauthorized dominion over Seneca's bank accounts and cash, Opp. Mem. at 16, is contradicted by Plaintiff's admission in paragraph 8 of the complaint that Defendant was Seneca's chief financial officer. Plaintiff's citation to *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (N.Y. App. Div. 1995) is unavailing because Plaintiff alleges that the converted cash is in Seneca's possession, not Defendant's. (Complaint, ¶¶ 29, 31, 32.)

Plaintiff's arguments reveal that his conversion claim is indistinguishable from his breach of contract claim. His argument that Defendant exercised unauthorized dominion over Seneca's funds is based on his argument that Defendant was required by the Operating Agreement to release those funds to Plaintiff. In such circumstances, a conversion claim does not lie.

8

## III.
## THE COURT SHOULD NOT GRANT PLAINTIFF LEAVE TO REPLEAD

A court is not required to permit a plaintiff to replead "where it appears that granting leave to amend would be unproductive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *see also, e.g.*, *Brady v. Lynes*, 05 Civ. 6540, 2008 WL 2276518, at *14 (S.D.N.Y. June 2, 2008) ("'a court may dismiss without leave to amend when amendment would be futile'") (quoting *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003).). This is the case here.

Without offering a proposed amended complaint, Plaintiff asserts that he would add allegations to his complaint that Defendant "made other payments from March 31, 2004 through the end of 2007 to Seneca shareholders" and "he continued to make payments in 2007 on behalf of Seneca to himself and other Seneca shareholders, apparently without the prior written consent of Omnicom." (Opp. Mem. at 19.)

These new proposed allegations would not repair the defects in the complaint because they are inadmissible extrinsic evidence offered to contradict the Operating Agreement. When a contract is unambiguous, like the Seneca Operating Agreement, the Court "should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence.'" *Pereira v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 525 F. Supp.2d 370, 375 (S.D.N.Y. 2007) (quoting *Alexander & Alexander Serv., Inc. v. Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)).

Plaintiff's desire to include Defendant's December 2007 statement concerning distributions is futile. This is improper extrinsic evidence. This does not, in any event, support Defendant's position, since it merely suggests that the parties attempted to get Omnicom to agree to distribute cash. It is also an inadmissible settlement communication by Defendant to Plaintiff.

*See* December 26, 2007 email from Defendant to Plaintiff (Masimore Dec., Exhibit 5) ("***Privileged & Confidential Without Prejudice Settlement Communication***"); s*ee also* Fed. R. Evid. 408; *Collier v. Boymelgreen Developers*, No. 06 cv 5425, 2008 WL 835706, *10 (E.D.N.Y. March 28, 2008) ("the fact remains that, under Fed.R.Civ.P. 12(f) . . . and Federal Rule of Evidence 408, the Court may strike . . . statements [pertaining to settlement discussions] as immaterial and/or prejudicial if those statements would be inadmissible at trial"). The Court should dismiss Plaintiff's claims with prejudice and without leave to amend.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant's motion for judgment on the pleadings, dismiss each of Plaintiff's causes of action with prejudice, and award such other relief as the Court may find to be just and equitable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:   /s/ Christopher Paparella
      Christopher Paparella
      Jason A. Masimore
      William J. Sanchez
      One Battery Park Plaza
      New York, New York 10004
      Tel: (212) 837-6804
      Fax: (212) 299-6804

*Attorneys for Defendant Gerard A. Neumann*